IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                    CRIMINAL NO. 1:15CR46
                                          (Judge Keeley)

DEONTE SPICER,

          Defendant.

MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S POST-TRIAL MOTIONS
[DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

Pending before the Court are seven post-trial motions filed by the defendant, Deonte Spicer ("Spicer"). The first motion seeks a judgment of acquittal notwithstanding the verdict (dkt. no. 153). The next three motions seek a new trial (dkt. nos. 167, 174, and 175). In addition, Spicer has moved for return of property in the possession of U.S.P. Hazelton S.I.S. (dkt. no. 176), and for pretrial/trial transcripts and all related discovery (dkt. no. 177). Finally, he seeks dismissal of the indictment with prejudice for lack of jurisdiction (dkt. no. 178). For the following reasons, the Court **DENIES** all of the pending motions.

## I. BACKGROUND

While Spicer was incarcerated at U.S.P. Hazelton, West Virginia, serving a ninety-six (96) month sentence on a previous conviction, a grand jury in the Northern District of West Virginia returned a one-count indictment charging him with assault with a dangerous weapon with intent to do bodily harm (dkt. no. 3). The

USA v. DEONTE SPICER                                           1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

indictment alleged that Spicer assaulted another inmate, C.W., with a dangerous weapon, intending to cause him bodily harm.

Magistrate Judge John S. Kaull appointed the Federal Public Defender for the Northern District of West Virginia, Brian Kornbrath ("Kornbrath"), to defend Spicer. Apparently displeased with Kornbrath's representation, Spicer sought new counsel during his arraignment (dkt. no. 7). Kornbrath moved to withdraw as counsel (dkt. no. 10), and Magistrate Judge Kaull, on June 4, 2015, appointed James Zimarowski ("Zimarowski"), another experienced criminal trial attorney, to defend Spicer. By all accounts, Zimarowski and Spicer initially worked well together in preparing for trial.

By September 23, 2015, however, Spicer had grown dissatisfied with Zimarowski's representation and filed a "pro se Motion for the Defendant to Make His Opening Statement or in the Alternative, to Represent Himself with Standby Counsel" (dkt. no 63). The Court took up the motion at a hearing on September 28, 2015, during which it advised Spicer that representing himself pro se presented difficulties and was not ideal. Undeterred, Spicer continued to assert his right to represent himself. Moreover, he made repeated demands to proceed to trial without delay on September 29, 2015, as

2

USA v. DEONTE SPICER                                              1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

scheduled.  Therefore, by order dated September 29, 2015, the Court
granted Spicer's motion to appear pro se, ordered Zimarowski to
remain in the case as standby counsel, but continued the trial for
one week in order to allow Spicer adequate time to prepare his
case(dkt. no. 122).[1]

Spicer's jury trial began on October 6, 2015, and lasted two
days. The evidence included testimony from numerous government and
defense witnesses, multiple VICON prison video surveillance
recordings, and testimony regarding reports filed at U.S.P.
Hazelton concerning the incident. After the jury returned a guilty
verdict on October 7, 2015, the Court advised Spicer that he had
thirty days from the verdict date in which to file any post-trial
motions.  It reiterated that time limit in its written judgment
order, entered on October 13, 2015 (dkt. no. 166).

Since the conclusion of his trial, Spicer has filed a flurry
of motions.  His first motion seeks a judgment of acquittal not-
withstanding the verdict (dkt. no. 153). The next three seek a new

_____

[1]Spicer had also filed a pro se "Motion to Have James
Zimarowski Withdrawn for Being Ineffective of Assistant of
Counsel [sic]" (dkt. no. 124). The motion was dated September 24,
2015, but was not received by the Court until September 30, 2015,
two days after the motion hearing. As a consequence, the Court
denied the motion as moot on October 1, 2015 (dkt. no. 137).

3

USA v. DEONTE SPICER                                        1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

trial (dkt. nos. 167, 174, and 175). Following those are motions
for return of property from U.S.P. Hazelton S.I.S. (dkt. no. 176),
and for pretrial/trial transcripts and all related discovery (dkt.
no. 177). Finally, Spicer seeks dismissal of the indictment with
prejudice for lack of jurisdiction (dkt. no. 178). The Court will
address each in turn.

### II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 33, a Court may
vacate a criminal conviction and grant a new trial "if justice so
requires." However, "a trial court should exercise its discretion
to award a new trial sparingly, and a jury verdict is not to be
overturned except in the rare circumstance when the evidence weighs
heavily against it." United States v. Smith, 451 F.3d 209, 217 (4th
Cir. 2006). Further, "any error, defect, irregularity, or variance
that does not affect substantial rights must be disregarded." Fed.
R. Crim. Pro. 52(a).

### III. DISCUSSION

**A.   Motion for Judgment of Acquittal Notwithstanding the Verdict**

Although Spicer's "Motion for Judgment of Acquittal
Notwithstanding the Verdict" ("JNOV") was filed on October 7, 2015,
the second day of his trial, it actually was dated September 13,

4

USA v. DEONTE SPICER                                         1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

2015. The motion was problematic because it sought an acquittal notwithstanding the verdict <u>before</u> any verdict had been returned, and as such, was unripe. Second, the specific contentions raised in the <u>pro se</u> motion previously had been denied by the Court during the final pre-trial conference on September 22, 2015, when the Court found that because Spicer was represented by appointed counsel, only his attorney could file motions on his behalf.[2]

At the commencement of his trial, Spicer, who by then was <u>pro se</u> with Zimarowski acting as standby counsel, renewed his motions, including the JNOV. The Court heard arguments on all the motions, including the contentions in the JNOV, and for reasons stated on the record, denied all of them.[3] Accordingly, the Court finds that it has ruled on Spicer's Motion for Judgment of Acquittal Notwithstanding the Verdict and **DENIES it as MOOT** (dkt. no. 153).

**B.   Motions for a New Trial**

Spicer filed his first motion for a new trial pursuant to Fed.

---

[2]These included his (1) Motion to Dismiss for Malicious Prosecution and Bad Faith (dkt. no. 65), and (2) Motion to Dismiss All Charges Due to No Evidence Linking the Defendant to Any Violation of Federal Law (dkt. no. 66).

[3]Spicer later for judgment of acquittal at the close of the government's case-in-chief, and again at the close of his own case-in-chief. The Court denied both of those motions (dkt. nos. 144 and 146).

USA v. DEONTE SPICER                                    1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

R. Crim. P. 33 on October 15, 2015 (dkt. no. 167), and his second motion on November 3, 2015 (dkt. no. 174). Thereafter, on November 6, 2015, he filed a "Request for Permission to File a Third Amended F.R.Crim.P. Rule 33 Motion," in which he sought to replace the first two motions for a new trial with a "Third and Final Amended F.R.Crim.P. Rule 33 Motion for a New Trial"(dkt. no. 175). The government did not object to the motion to amend and, in its response, addressed all of the contentions raised by Spicer in his third motion for a new trial (dkt. no. 184). For purposes of the record, the Court **GRANTS** Spicer's request for permission to amend the motion for a new trial, **DENIES as MOOT** Spicer's first two motions for a new trial (dkt. nos. 167 and 174), and turns to the substantive matters raised in his third amended motion.

Spicer seeks a new trial on the following eight grounds:

1) The Court failed to allow him to admit the knife found at the crime scene, which precluded his theory of defense;

2) He was never given a competency hearing, despite his history of mental and psychological issues and medication use;

3) The Court violated his "compulsory process rights" by failing to allow him to interview all of his witnesses, including two subpoenaed material witnesses;

6

USA v. DEONTE SPICER                                           1:15CR46

## ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

4) He was tried by a jury that did not represent a fair cross-section of the community, including the exclusion of one Asian juror;

5) He was prejudiced at trial because he was not afforded an opportunity to view certain video footage that would have cleared him of having made incriminating statements to witnesses;

6) His ability to prepare for trial was hampered due to his confinement in the Special Housing Unit ("SHU") with no access to the law library and telephone;

7) The indictment was obtained through perjury by Officer J. Canfield, and he was not allowed to challenge the indictment prior to trial; and

8) He was only allowed fifteen minutes to interview each of his eleven witnesses prior to trial.

For the reasons that follow, the Court **DENIES** Spicer's motion for a new trial (dkt. no. 175).

1.   **The Court Properly Determined the Knife was Inadmissable**

Spicer sought to admit a knife that correctional officers discovered during a sweep conducted shortly after the stabbing incident. Although the government originally had listed the knife as a potential exhibit, it decided not to use it at trial after

USA v. DEONTE SPICER                                      1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

determining that it had not been involved in the stabbing, but likely had been thrown away by another inmate fearing discovery during the prison-wide search that followed the stabbing incident.

At trial, after hearing argument from the parties about whether the knife should be admitted, the Court concluded there was no evidence connecting the knife to the stabbing, and that its admission could potentially confuse the jury. Accordingly, under Fed. R. Evid. 402 and 403, it denied its admission.

### 2. No Competency Hearing was Warranted

Spicer never sought a competency evaluation while representing himself, nor did his appointed attorneys seek one during the time they represented him. As well, the government at no point in the case sought a competency evaluation. Spicer, however, contends that the Court should have ordered a competency hearing sua sponte, and its failure to do so was an egregious error justifying a new trial.

A district court shall order a competency hearing sua sponte

> if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

United States v. Banks, 482 F. 3d 733, 742 (4th Cir. 2007) (citing

8

USA v. DEONTE SPICER                                        1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

18 U.S.C. § 4241(a)). The determination whether reasonable cause for an evaluation exists is left to the district court's discretion. Id.

Other than Spicer's naked claim that he "has a history of mental/psychological issues and medication," he has offered no evidence that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. To the contrary, in the Court's view, Spicer has always appeared cogent and capable. During trial, he made clear arguments relating to his representation, and his case in general, to both the Court and the jury.

Additional evidence militating against the need for a sua sponte competency hearing is found in the multitude of motions Spicer wrote that further establish his ability to understand the proceedings and to assist in his defense. Simply put, there is no evidence suggesting Spicer was incompetent such that the Court should have recognized a need for a competency hearing.

### 3.   Spicer was not Denied an Opportunity to Interview Witnesses

Spicer has not identified any specific witness he allegedly was prevented from interviewing. Both Spicer and his appointed attorneys had several months to interview witnesses and prepare a

9

USA v. DEONTE SPICER                                          1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

defense. Indeed, during the hearing on Spicer's motion to represent himself, Zimarowski informed the Court that he had interviewed all of the witnesses identified by Spicer and determined that many either were not credible or had nothing substantive to offer that would not also be cumulative. Moreover, Spicer was free to subpoena any witness he chose; indeed, he exercised his right to do so and subpoenaed eleven witnesses on his behalf.

Spicer names no witness he sought but was unable to subpoena. Nor has he provided so much as a glimpse into what such a witness might have said, or how their absence materially impacted the outcome of his trial or his substantive rights.

**4.   The Jury Represented a Fair Cross-Section of the Community**

Spicer next claims that the jury did not represent a fair cross-section of the community because it was an all-white jury. He notes there were no African-Americans on the jury, and the lone Asian-American member of the jury pool was struck during <u>voir dire</u>.[4] Spicer presents no other argument regarding the jury selection or venire processes, or how they may have been

---

[4]Apparently, Spicer's memory is short because it was he who used one of his peremptory challenges to strike the lone Asian-American juror.

USA v. DEONTE SPICER                                          1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

discriminatorily carried out. Significantly, he did not object to the jury venire at trial.

"Proof of under-representation in a particular panel or venire is not sufficient." U.S. v. Peoples, 1995 WL 674572, at *1 (4th Cir. 1995). In order to establish a prima facie case that the jury was unfair because it contained no African-Americans, Spicer would need to show that was the result of a "systematic exclusion to the jury-selection process." Id. (citations omitted).

The Fourth Circuit has adopted the a three-prong test, known as the Duren test, to guide courts in analyzing this issue:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

U.S. v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993) (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)). While it is uncontested that African-Americans are a distinctive group within the community, Spicer has utterly failed to even address the remaining two prongs, let alone satisfy them.

First, the "Process for Juror Selection" published[5] by the

--------

[5]See http://www.wvnd.uscourts.gov/sites/wvnd/files/Juror%20Process%20N

USA v. DEONTE SPICER                                              1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

Northern District of West Virginia provides the process by which

jury pools are filled:

> First, a master jury wheel is created by selecting names
> at random from the Registered Voters Lists for the 32
> counties that comprise the Northern District of West
> Virginia and the list of drivers, 18 years of age and
> older, for the same 32 counties from the list provided by
> the Department of Motor Vehicles. Second, names are
> randomly drawn from the master jury wheel to receive
> juror qualification questionnaires. Individuals' answers
> to these questionnaires determine whether they are
> legally qualified to serve. If so, the names of those
> persons are put on a second wheel, a qualified jury
> wheel. As prospective jurors are needed for a specific
> trial or grand jury, juror summonses are sent to persons
> randomly selected from the qualified wheel. All of these
> selections are carried out through a properly programmed
> electronic data processing system for pure randomized
> selection. The pure randomized process ensures that the
> mathematical odds of any single name being picked are
> substantially equal.

The Fourth Circuit has clearly held that:

> [T]he use of current voter registration lists as the
> source for a jury pool from which random selection of
> jurors is made presumptively provides a fair
> cross-section, even if minorities are underrepresented on
> those lists, as long as there is no affirmative
> discrimination in registration.

Lewis, 10 F.3d at 1090 (citing United States v. Cecil, 836 F.2d

1431 (4th Cir.), cert. denied, 487 U.S. 1205 (1988)). In addition,

"Congress has proclaimed that voter registration lists are the

preferred source of names for prospective jurors." Id. (citing the

_____

otice.pdf

USA v. DEONTE SPICER                                    1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

Jury Selection Act, 28 U.S.C. § 1863(b)(2) (1988)). Because Spicer

has not alleged any form of affirmative discrimination in the voter

registration process, and because the methods employed through

random selection from motor-voter rolls is presumptively fair and

reasonable, he has failed to meet the second prong of the Duren

test.

    Next, Spicer has failed to allege that the underrepresentation
of African-Americans in the jury pool is the result of their
systematic exclusion from the jury selection process instead of a
natural occurrence due to the fact that African-Americans make up
just over two percent of the communities from which the Court draws
jurors.[6] The fact that African-Americans make up such a small
fraction of the potential jury pool, coupled with absence of any
evidence of their systemic exclusion, establishes Spicer's failure
to meet the third prong of the Duren test. Accordingly, his claim
lacks any merit.

--------

    [6]See United States Census Bureau, State and County Quick
Facts, West Virginia, available at:
http://quickfacts.census.gov/qfd/states/54000.html The Census
Bureau notes that the West Virginia African-American population
was 3.7% in 2014. A closer look, however, reveals a lower
percentage in many of the counties from which the Northern
District draws its juries. The Census Bureau provides the
African-American population for the counties of Barbour (0.5%),
Berkeley (7.5%), Braxton (0.6%), Brooke (1.6%), Calhoun (0.3%),
Doddridge (1.9%), Gilmer (12.8%), Grant (0.9%), Hampshire (1.3%),
Hancock (2.6%), Hardy (3.0%), Harrison (1.7%), Jefferson (6.8%),
Lewis (0.6%), Marion (3.5%), Marshall (0.7%), Mineral (3.1%),
Monongalia (3.9%), Morgan (0.8%), Ohio (3.7%), Pendleton (2.4%),
Pleasants (1.5%), Pocahontas (1.1%), Preston (1.3%), Randolph
(1.5%), Ritchie (0.4%), Taylor (1.1%), Tucker (0.4%), Tyler
(0.3%), Upshur (0.9%), Webster (0.4%), and Wetzel (0.5%). This
equates to an average of 2.18% per county before accounting for
populations or percentage of registered voters.

USA v. DEONTE SPICER                                          1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

**5.   Spicer was not Prejudiced by his Inability to View Certain Video Recordings**

Spicer asserts that video recordings depicting him at various locations would have refuted testimony from government witnesses that he made certain incriminating statements to them. He provides no details about exactly what videos existed that he was unable to view, or what they would have depicted. Nor does Spicer explain how recordings without audio would have refuted testimony about his alleged statements.

Witnesses for the government repeatedly denied that any such evidence existed. Rather, they testified that any recordings from cameras at the locations Spicer mentioned at trial were unlikely to have caught any of his alleged interactions with the witnesses and, at any rate, no longer existed. Again, Spicer has offered nothing more than mere speculation that he was prejudiced in a way that would warrant a new trial.

**6.   Spicer's Confinement in the SHU did not Materially Prejudice Trial Preparation**

Spicer contends that because of his confinement in the SHU he was denied access to the law library and telephone, and that this hampered his ability to properly prepare for trial. His argument omits the fact that trial preparation and legal research had

14

USA v. DEONTE SPICER                                                    1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

occurred throughout the several months prior to trial while he was represented by counsel. It was only on the eve of trial, after he had demanded (and been granted) the right to represent himself and to have his trial proceed without delay, that he complained his confinement in the SHU hampered his trial preparation.

Without more, Spicer's bare allegations provide no specifics about how limited access to the law library prevented him from preparing for trial. He clearly was in contact with Zimarowski throughout the case, discussing discovery and possible theories of defense with him. Spicer leaves it for the Court to speculate about what he may have needed from the library that he was unable to access through Zimarowski.

As already noted, having Zimarowski as standby counsel enabled Spicer to access legal research and analysis. He does not dispute Zimarowski's role in crafting his defense since the early days of his case. Spicer, therefore, has failed to establish how his limited access to the law library and telephone prejudiced him so as to warrant a new trial.

**7.   There is no Evidence that the Indictment was Obtained Through Perjury or that Spicer was not Allowed to Challenge the Indictment Prior to Trial**

Spicer has provided no evidence to support his assertion that

USA v. DEONTE SPICER                                          1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

the government obtained its indictment through the perjury of Officer J. Canfield ("Canfield"). Indeed, he does not even attempt to establish what false testimony Canfield allegedly offered.

Spicer's claim, moreover, is untimely. Fed. R. Crim. P. 12(b)(3)(A) and (B) provide that:

> The following defenses, objections, and requests must be raised by pretrial motion **if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits**:
> (A) a defect in instituting the prosecution, including:
>     (I) improper venue;
>     (ii) preindictment delay;
>     (iii) a violation of the constitutional right to a speedy trial;
>     (iv) selective or vindictive prosecution; and
>     (v) an error in the grand-jury proceeding or preliminary hearing;
> (B) a defect in the indictment or information, including:
>     (I) joining two or more offenses in the same count (duplicity);
>     (ii) charging the same offense in more than one count (multiplicity);
>     (iii) lack of specificity;
>     (iv) improper joinder; and
>     (v) failure to state an offense;
> . . .

Accordingly, any attacks on defects in the indictment or in how the prosecution got underway must have been raised prior to trial, which Spicer failed to do.[7]

---

[7] He filed two pre-trial motions to dismiss the indictment (dkt. nos. 65 and 66).

16

USA v. DEONTE SPICER                                          1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

   **8.  Spicer's Limited Time to Interview his Witnesses Before
        Trial did not Unfairly Prejudice his Defense**

   Finally, Spicer claims that because he was only allowed
fifteen minutes to interview his eleven witnesses prior to trial,
his defense was unfairly prejudiced. As with all of the other
grounds upon which he seeks a new trial, little to no information
in support of this claim has been provided.  Through Zimarowski,
Spicer was able to question his witnesses to ascertain whether they
could provide testimony supportive of his defense. Moreover, Spicer
was able to speak personally with each witness prior to their
testimony.

   During trial, Spicer thoroughly questioned each of his
witnesses concerning what they saw prior to, during, and after the
stabbing incident. None appeared to have been caught off guard by
any of Spicer's questions. On the contrary, all answered readily,
albeit not necessarily giving the exact answer Spicer may have
desired.

   It is unclear how much additional time Spicer contends he
needed to prepare his witnesses adequately. Once again, the Court
is left to guess about what information he hoped to elicit. Spicer,
therefore, has failed to demonstrate prejudice, particularly given

USA v. DEONTE SPICER                                    1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

the fact that standby counsel had previously interviewed many of the witnesses, and any time constraint was a consequence of his own demand to proceed to trial posthaste.

**C.    Motion for Return of Property from U.S.P. Hazelton S.I.S.**

On November 6, 2015, Spicer sought an order for the return of certain items of personal property being held as potential evidence by U.S.P. Hazelton officials.  Included in these items are: (1) one MP3 player, (2) one sweatshirt, (3) one pair of sweatpants, and (4) two black "wave caps" (dkt. no. 176). None of these were admitted into evidence at Spicer's trial.

In its response, the government avers that Hazelton officials returned both the MP3 player and the two wave caps to Spicer on December 8, 2015. It contends, however, that the sweatshirt and sweatpants may still hold evidentiary value should there be a new trial. Although the Court has denied his motion for a new trial, Spicer may yet seek a new trial through an appeal to the Fourth Circuit.  Accordingly, the Court **DENIES** his request for the return of his sweatshirt and sweatpant until after the conclusion of the appeals process in this matter.

**D.    Motion for Pre-trial and Trial Transcripts and all Related Discovery**

Spicer seeks copies of all transcripts and discovery. The

18

USA v. DEONTE SPICER                                      1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

Court first notes that Spicer was in possession of all discovery relating to his case prior to trial, and is unaware of any discovery that was not in his possession on the first day of trial.

Of course, Spicer is entitled to copies of his trial transcript upon filing an appeal. See Miller v. Smith, 115 F.3d 1136, 1146 (4th Cir. 1997) (noting that "the Supreme Court has repeatedly found that a state may not deny an indigent defendant his right to appeal by limiting his right to obtain a transcript necessary for his appeal" (citing Eskridge v. Washington State Bd. of Prison Terms and Paroles, 357 U.S. 214, 215-16 (1958)). At this juncture, however, Spicer has not been sentenced, and his request is not ripe. Accordingly, the Court **DENIES** Spicer's motion **WITHOUT PREJUDICE** to his right to refile it should he undertake an appeal in this action.

### E.   Motion to Dismiss the Indictment with Prejudice for Lack of Jurisdiction

Finally, Spicer seeks dismissal of the indictment with prejudice for lack of jurisdiction. He advances three theories in support of his claim. First, he claims that he has been detained past his original release date of April 28, 2015, without a federal detainer. Next, he asserts that he has stood trial and remains in custody without any such detainer. Finally, he argues that no

19

USA v. DEONTE SPICER                                    1:15CR46

### ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

Federal Bureau of Investigation ("FBI") referral was issued and no FBI agent ever appeared in this case.

Regarding the first two contentions, it is true that Spicer was scheduled to be released from his previous sentence on April 28, 2015. On April 27, 2015, however, Magistrate Judge Kaull issued a warrant for Spicer's arrest pursuant to the complaint filed in this case (dkt. no. 2) that subsequently was replaced with an indictment returned by the grand jury on May 5, 2015 (dkt. no. 3). Spicer made his initial appearance in front of Magistrate Judge Kaull on May 15, 2015, at which time he was properly detained pending trial.

As to his third contention, Spicer presents no basis for his claim that an FBI referral is necessary, or why the appearance of an FBI agent is required. The claim is frivolous on its face and lacks any merit. The Court, therefore, **DENIES** Spicer's motion to dismiss for lack of jurisdiction.

### IV. SUMMARY OF THE COURT'S RULINGS

For the reasons discussed, the Court:

1. **DENIES** Spicer's motion for judgment of acquittal notwithstanding the verdict (dkt. no. 153);

2. **DENIES as MOOT** Spicer's first two motions for a new trial

20

USA v. DEONTE SPICER                                            1:15CR46

## ORDER DENYING POST-TRIAL MOTIONS
### [DKT. NOS. 153, 167, 174, 175, 176, 177, and 178]

(dkt. nos. 167 and 174);

3.   **GRANTS** Spicer's request for permission to file a third amended
     F.R.Crim.P. Rule 33 motion only insofar as it seeks permission
     to file the amended motion for a new trial (dkt. no. 175);

4.   **DENIES** Spicer's third amended motion for a new trial (dkt. no.
     175);

4.   **DENIES** Spicer's motion for return of property from U.S.P.
     Hazelton S.I.S. (dkt. no. 176);

5.   **DENIES** Spicer's motion for pretrial/trial transcripts and all
     related discovery in this case (dkt. no. 177); and

6.   **DENIES** Spicer's motion to dismiss with prejudice due to lack
     of jurisdiction (dkt. no. 178).

     It is so **ORDERED**.

     The Court directs the Clerk to transmit copies of this Order
to counsel of record and to the <u>pro se</u> defendant, return receipt
requested.

DATED: February 4, 2016.

                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE